### JOHNSON v. CITY OF ESCANABA.

1. TAXATION — SPECIAL ASSESSMENTS — PAVING — MUNICIPAL CORPORATIONS—COMMON COUNCIL AS BOARD OF REVIEW.

   The revision of a special assessment roll for paving a street or the making of a new roll must be done by the board of assessors, not by the common council in reviewing the assessment. 1 Comp. Laws, § 3205.

2. SAME—STATUTES—REVISION—CORRECTIONS.

   The power of the common council to correct the roll as to any assessment or description does not authorize the council to adopt a new basis of distributing the tax; its authority is limited to corrections of mathematical errors in computing amounts or mistakes in descriptions of property assessed. 1 Comp. Laws, §§ 3193-3205.

Appeal from Delta: Cooper, J., presiding. Submitted November 13, 1911. (Docket No. 92.) Decided January 23, 1912.

Bill by Carl A. Johnson and others against the city of Escanaba to set aside a special assessment. From a decree for defendant, complainants appeal. Reversed.

*Arthur H. Ryall*, for complainants.

*I. C. Jennings*, for defendant.

BLAIR, J. This suit was instituted by various taxpayers in the city of Escanaba to set aside a certain paving tax assessed against them for the improvement of Langley street in that city. None of the property of complainants fronts upon, or is adjacent to, Langley street, but all of their lots front upon streets intersecting that street at right angles. Langley street runs east and west, and the special assessment district determined upon by the council comprised one-half block north and one-half block south of said street between the east line of Stephenson avenue and the west line of Charlotte street. There were 4 lots north and 3½ lots south of Langley street.

In April, 1907, the street committee made a report to the council and recommended a plan of apportioning special assessments. This report was accepted and ordered placed on file. This method provided, in short, for the division into two equal parts of the total amount to be assessed in any particular district. One of these amounts was to be distributed among the various lots fronting upon the particular street to be improved, according to the frontage of the several lots so assessed. In other words, one-half of the cost of the improvement was to be assessed according to frontage; the other half was to be spread over the entire district according to the area of the several lots. This, however, was not to be spread equally according to area, but, as between the lots upon which this portion was computed, the amount to be assessed upon each lot varied with the distance from the corner. To illustrate: If the total area of four lots extending from the street improved down a side street amounted to 1,000 square yards, and the total amount to be assessed against

these lots on account of the half to be assessed according to area amounted to $1,000, that sum would not be distributed equally over these four lots so as to assess each of them $250, but the corner lot would be assessed 50 per cent., or $500, and the second, 25 per cent., or $250, the third, 15 per cent., or $150, and the fourth, 10 per cent., or $100; or where these exact proportions were not used, other percentages were adopted for the distribution among the several lots, varying with the distance of the lots from the corner. The assessments complained of, as well as all other assessments made thereafter, were made in accordance with this plan, although the city engineer, who was *ex officio* a member of the board of special assessors, testified that the plan was merely used as a guide in aid of their discretion and not as binding their judgment.

Complainants contend (1) that the assessments were void because made according to a fixed and arbitrary plan and not according to benefits as directed by the council:

"*Second.* The action of the council in fixing this district was without jurisdiction and void for the reason that when this question was properly before the council in May, 1907, the whole matter was dropped and nothing further was done until July 20, 1909, at which time the district was fixed without a new notice being given.

"*Third.* The action of the council on September 7, 1909, was illegal in that it made (1) an entirely new assessment roll so far as amounts were concerned while its rights in this respect were limited to correcting the roll as to assessment or description of property, or (2) referring it back to the board for revision, or (3) annulling or ordering a new roll."

We consider the third point first. 1 Comp. Laws, §§ 3193, 3198, 3200, provide:

"There shall be a board of special assessors in every city, consisting of the city surveyor, and two other members, who shall be freeholders and electors in the city, to be appointed by the mayor, by and with the consent of the council. Their compensation shall be prescribed by the council. Special assessments authorized by this act shall be made by such board. * * *

"When any special assessment is to be made *pro rata* upon the lots and premises in any special district, according to frontage or benefits, the council shall, by resolution, direct the same to be made by the board of assessors; and shall state therein the amount to be assessed and whether according to frontage or benefits; and describe or designate the lots and premises or locality constituting the district to be assessed.

"* * * If the assessment is directed to be according to benefits, they shall assess upon each lot such relative portion of the whole sum to be levied as shall be proportionate to the estimated benefit resulting to such lot from the improvement. When the board shall have completed the assessment they shall report the same to the council; such report to be signed by at least two of the assessors, may be in the form of a certificate, indorsed on the assessment roll, as follows:"

Section 3204 requires notice of the filing of the special assessment roll to be given and of the meeting of the council to consider objections thereto.

, Section 3205 provides:

"At the time and place appointed for the purpose, as aforesaid, the council and board of assessors shall meet and there, or at some adjourned meeting, review the assessment and shall hear any objections to any assessment which may be made by any person deeming himself aggrieved thereby, and the council may correct said roll as to any assessment, or description of premises, appearing therein, and may confirm it as reported, or as corrected; or they may refer the assessment back to the board for revision; or annul it and direct a new assessment; in which case the same proceedings shall be had as in respect to the previous assessment. When a special assessment shall be confirmed, the city clerk shall make an indorsement upon the roll showing the date of confirmation."

In the instant case, Mr. Moe, a member of the board of special assessors, prepared the assessment roll, and under the heading "Amount Assessed" stated the amount to be assessed against each lot, according to his judgment of the benefit to such lot, and left it with the city clerk for consideration by the other assessors. On August 3, 1909, a

motion was made and adopted that "the special assessment rolls for Langley and Sinclair streets be referred back to the board of special assessors for corrections, as only one of the special assessors had signed said roll." After the roll was referred back to the board of assessors, it was signed by Mr. Moe and Mr. Follo and filed. Later, Mr. Brotherton, the city engineer, signed it. Mr. Moe and Mr. Brotherton disagreed as to the method to be pursued in assessing the benefits, and after the roll was referred back to the board Mr. Moe put down in pencil under the heading "Remarks" the amounts according to Mr. Brotherton's method of arriving at the benefits. Mr. Moe testified that he made these figures "to help the council out, if they wanted it; but I understood in the first place it was referred back to me on account of it wasn't signed by more than one. Of course I didn't want to change my figures. I thought it was right, the first one I had."

At the meeting of the council on September 7, 1909, the following proceedings were taken:

"On motion of Ald. Valentine supported by Ald. St. Jacques a recess of ten minutes was taken in which the assessment rolls of Langley St. and Sinclair St. were reviewed. After the adjournment Mayor Greenhoot called the meeting to order. Ald. St. Jacques supported by Ald. McColl moved the adoption of the following resolution: Resolved, That the special assessment roll for the grading, paving, curbing, and draining of Langley St. from the east line of Stephenson Ave. to the west line of Charlotte St. be reviewed and revised by this council by changing the assessment of each piece and parcel of land described on said roll in accordance with the amounts set opposite each description on said roll in pencil in column headed 'Remarks,' and the city clerk is hereby instructed forthwith to enter said amounts in column headed 'The amounts assessed as confirmed by council.' The resolution was adopted by the following vote."

The city clerk having complied with the instructions, the assessment roll was confirmed "as corrected." When the council took up the consideration of the assessment roll as signed by the entire board of assessors it is clear

that the amounts assessed therein were those set down by Mr. Moe in the first instance, and it is equally clear that the council changed the assessment of every parcel of land to correspond with the pencil memoranda. In doing this we think the council exceeded its powers. The only power granted to the council to itself alter the roll in anywise is by way of correcting it "as to any assessment or description of premises appearing therein." A revision of the roll or a new roll must be made by the board of assessors. The provisions as to the revision and annullment of the roll imply that the corrections to be made by the common council are less extensive and relate to corrections of mathematical errors in computing amounts or errors in the description of property. In view of our conclusion, it becomes unnecessary to consider the other interesting questions discussed in the briefs of counsel.

The decree is reversed, and a decree may be entered quashing the proceedings as to complainants, with costs to complainants.

McALVAY, STONE, OSTRANDER, and BIRD, JJ., concurred.